No. 25-1219

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

**Ann Marie Maccarone,**

**Plaintiff-Appellant**

**v.**

**Siemens Industry, Inc.**

**Defendant-Appellee**

**On Appeal from the United States District Court for the District of Rhode Island in Case No. 20-cv-259, Chief Justice John McConnell**

———

## <u>APPELLANT – PLAINTIFF'S BRIEF</u>

SONJA L. DEYOE
LAW OFFICES OF SONJA L DEYOE
395 SMITH STREET
PROVIDENCE, RI 02908
(401) 864-5877

COUNSEL FOR
PLAINTIFF-APPELLANT

JILLIAN S. FOLGER-HARTWELL
DIMITRIOS MARKOS
LITTLER MENDELSON
One Financial Plaza, Suite 2205
PROVIDENCE, RI 02903
(401) 824-2112
COUNSEL FOR
DEFENDANT-APPELLEE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ IV

REASONS WHY ORAL ARGUMENT SHOULD BE GRANTED ............. VIII

JURISDICTIONAL STATEMENT .....................................................1

STATEMENT OF THE CASE ..........................................................2

STANDARD OF REVIEW ...............................................................4

QUESTIONS PRESENTED...............................................................4

    1.       DID THE COURT ERR IN DETERMINING THAT THE APPELLANT'S PREVAILING WAGE ACT CLAIMS WERE PREEMPTED BY THE LABOR RELATIONS MANAGEMENT ACT AT SUMMARY JUDGMENT? ..........................5

    2.       DID THE COURT ERR IN DETERMINING THAT THE APPELLANT ENTERED INTO A BINDING SETTLEMENT AGREEMENT AT THE TIME OF THE MEDIATION? ..................................................................5

    3.       DID THE COURT ERR IN DENYING APPELLANT A HEARING ON HER OPPOSITION TO THE PETITION TO ENFORCE WHEN IT INDICATED BY EMAIL THAT IT WOULD GRANT THAT HEARING? ........................................5

SUMMARY OF THE ARGUMENT....................................................5

ARGUMENT ............................................................................10

    1.       THE APPELLANT'S STATE LAW WAGE CLAIMS ARE NOT PREEMPTED BY SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT.........................................................................10

**2.     THE COURT ERRED WHEN IT DENIED THE APPELLANT THE OPPORTUNITY TO BE HEARD IN HER OPPOSITION TO THE PETITION TO ENFORCE THE SETTLEMENT AGREEMENT.........17**

**3.     THERE WAS EVIDENCE TO SUPPORT A FINDING THAT THE APPELLANT WAS UNDULY INFLUENCED INTO AGREEING WITH THE SETTLEMENT. ....................................................................19**

**4.     THERE WERE TERMS IN THE RELEASE THAT WERE NOT AGREED TO IN THE SETTLEMENT CONFERENCE, AND AS A RESULT, THE APPELLANT SHOULD NOT HAVE BEEN ORDERED TO SIGN THE RELEASE. .......................................................20**

**CONCLUSION ....................................................................................24**

**CERTIFICATE OF COMPLIANCE ...............................................26**

**CERTIFICATE OF SERVICE .........................................................27**

**ADDENDUM ......................................................................................28**

# TABLE OF AUTHORITIES

## CASES

Abdallah v. Bain Capital LLC, 752 F.3d 114 (1st Cir. 2014)....................................4

Adames v. Exec. Airlines, Inc., 258 F.3d 7 (1st Cir. 2001) ...................................12

Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985)......................................11, 12

Anthony v. Hutchins, 10 R.I. 165 (1872) ................................................................20

Beaudoin v. Beaudoin, 85 R.I. 465 (1957)...............................................................20

BIW Deceived v. Local S6, Industrial Union of Marine & Shipbuilding Workers of

    America, 132 F.3d 828 (1st Cir 1996) ................................................................11

Caranci v. Howard, 708 A.2d 1321 (R.I.1998)...................................................9, 20

Cavallaro v. Umass Memorial Healthcare, Inc., 678 F.3d 1 (1st Cir. 2012). ...........12

Cavallaro, 678 F.3d at 5...........................................................................................12

Cipparulo v. David Friedland Painting Co., 139 N.J. Super. 142 (App.Div.1976). 14

Commonwealth School Inc., v. Commonwealth Academy Holdings, LLC., 994

    F.3d 77 (1st Cir. 2021) ..................................................................................8, 24

Container Corp. v. Franchise Tax Bd., 463 U.S. 1 (1983).......................................11

Downtown Inv. Ass'n v. Boston Metro. Bldgs., Inc., 81 F.2d 314 (1st Cir.1936) ....8,

    21, 24

Fidelity v. Guar. Ins. Co. v. Star Equipment Corp., 541 F.3d 1 (1st Cir. 2008) .....18

Filippi v. Filippi, 818 A.2d 608 (R.I.2003)..................................................9

Hughes v. United Air Lines, Inc., 634 F.3d 391 (7th Cir. 2011).............................11

In re The Bible Speaks, 73 B.R. 848 (Bank. D. Ma. 1987),..................................19

International Brotherhood of Electrical Workers, Local Union No. 126 v. American

    Lighting and Signalization LLC, 2023 WL 5279133 (ED PA 2023)....................5

Kline v. Security Guards, Inc., 386 F.3d 246, (3rd Cir. 2004)..................................16

Lamore v. Fleet National Bank, 2006 WL 3293936 (RI. Sup. 2006).....................19

Lavoie v. North East Knitting, Inc., 918 A.2d 225 (R.I. 2007) ................................9

Lawless v. Stewart Health Care System, LLC, 894 F. 3d 9 (1st Cir. 2018) .............12

Lingle v. Norge Div. Magic Chef, Inc., 486 U.S. 399 (1988) ...........................14, 16

Livadas v. Bradshaw, 512 U.S. 107 (1994) .......................................................12, 13

López-Muñoz v. Triple-S Salud, Inc, 754 F.3d 1 (1st Cir. 2014). ...........................11

Malave v. Carney Hosp., 170 F.3d 217 (1st Cir.1999) ...........................................21

Marcinko v. D'Antuono, 104 R.I. 172 (1968) .........................................................20

Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987). .................................................10

NJ Carpenters v. Tishman Constr Co, 760 F.3d 297 (3rd Cir. 2014).......................13

Passarelli v. Passarelli, 94 R.I. 157 (1962)..............................................................20

Quint v. A.E. Staley Mfg. Co., 246 F.3d 11 (1st Cir 2001) .....................................21

Roman-Oliveras v. Puerto Rico Elec. Power Authority, 797 F.3d 83 (1st Cir. 2015) 4

Rueli v. Baystate Health, Inc., 835 F.3d 53 (1st Cir. 2016)......................................11

Soar v. National Football League Players' Ass'n, 550 F.2d 1287 (1st Cir.1977)....21

State v. Zambawa, 787 N.W. 2d 177 (Minn 2010)..................................................20

Stockett v. Penn Mutual Life Insurance Co., 82 R.I. 172 (1954) ............................9

Tinney v. Tinney, 770 A.2d 420 (R.I.2001)..............................................................9

Ungar v. Palestine Liberation Organization, 599 F.3d 79 (1st Cir. 2010) .................4

## STATUTES

26 CFR § 601.401 ............................................................................................8, 23

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1332 ....................................................................................................1

29 U.S.C. § 185 ..................................................................................................2, 11

34 Pa. Code § 9.104 ..............................................................................................12

N.J. Stat. Ann. § 34:11–56.40................................................................................13

R.I.G.L. § 28-14-1 ..................................................................................................2

R.I.G.L. § 28-14-20 ...............................................................................................16

R.I.G.L. § 37-13-1 ..................................................................................................2

R.I.G.L. § 37-13-17 ...............................................................................................15

R.I.G.L. § 37-13-6 .................................................................................................15

R.I.G.L. § 37-13-7 .................................................................................................14

R.I.G.L. § 42-112-1 ................................................................................................2

# OTHER AUTHORITIES

Canon 2 A, Guide to Judicial Conduct Pt. A: Codes of Conduct ............................ 18

Rule 3.3 Candor Toward the Tribunal, Rhode Island Disciplinary Rules of

    Professional Conduct ............................................................................... 18

# TREATISES

2 Dan B. Dobbs, Dobbs Law of Remedies, § 10.3 (2d ed.1993) ............................. 9

Restatement (Second) of Contracts § 17 (1981) ..................................................... 21

## **REASONS WHY ORAL ARGUMENT SHOULD BE GRANTED**

This case implicates factual matters best suited for oral argument as they pertain to the enforcement of a settlement agreement.  In addition, it also raises complicated issues pertaining to section 301 of the Labor Management Relations Act in relation to Rhode Island State Law.  Accordingly, oral argument would assist this Court by providing clarification of the issues beyond the written briefs.

## JURISDICTIONAL STATEMENT

This is an appeal by Plaintiff-Appellant Ann Marie Maccarone from a final order of the District Court granting judgment in favor of the Defendant-Appellee Siemens Industry Inc.  The District Court entered judgment in the Defendant-Appellee's favor on February 6, 2025, after issuing a memorandum and order dated February 6, 2025, granting Defendant-Appellee's motion to dismiss.[1] (ADD21-22 and ADD23).

The District Court had jurisdiction over the case as it presented a Federal Question jurisdiction because Appellant asserted claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and supplemental jurisdiction over her state law claims.

On March 3, 2025, a notice of appeal was filed. ADD24. The appeal is timely under Rule 4(a)(2) of the Federal Rules of Appellate Procedure because the Notice of Appeal in this civil case was filed within thirty days after the Judgment was issued on February 6, 2025. ADD23. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the February decision is a final order or judgment that disposes of all parties' claims in Case No. 20-259. ADD23.

---

[1] References to "APP v.1_" and "APP v. 2__" are to the Appendix of which there are two volumes; references to "ADD_" are to the Addendum.

## STATEMENT OF THE CASE

The appellant filed the underlying action which sought payment for wages owed to the appellant because of the appellees alleged violation of the Rhode Island Payment of Wages Act, R.I.G.L. § 28-14-1 et seq., (APPvI 37), the Rhode Island Prevailing Wage Act, R.I.G.L. § 37-13-1 et seq., (APPvI 37), Fair Labor Standards Act, 29 U.S.C. § 201 et seq., (APPvI 37), whistleblower, R.I.G.L. § 28-50-1, et seq (APPvI 38), and sex-based discrimination claims under the Rhode Island Civil Rights Act, R.I.G.L. § 42-112-1 et seq (APPvI 37-38).

In its December 15, 2023, ruling on the Defendant's motion for summary judgment, the Court determined that the Appellant's claims under both the Rhode Island Payment of Wages act and Rhode Island Prevailing Wage act were preempted by the section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 because the Court would have to interpret the terms of the collective bargaining agreement to resolve her Rhode Island Fair Wage Act and Rhode Island Prevailing Wage Act Claims. (ADD6). The Appellant's Whistleblower and sex discrimination claims were also dismissed. (ADD10- 12) After this decision, the Appellant was left with only her claims under the Fair Labor Standards Act.

Thereafter, a settlement conference was held with the Court on March 6, 2024.  (ADD13). At the time of the mediation, the Appellant was under a

significant medical disability, which was unknown to counsel or the court. (APPvII 524-533). As outlined in her affidavit, Appellant had extreme anxiety, pain, sleep deprivation, and was under the influence of Oxycodone (See generally APPvII 424-433 and specifically ¶ 9, 18, 25, 26)

At the end of the mediation, the Plaintiff/Appellant agreed to a settlement amount. (ADD013). Thereafter, a release was forwarded to Appellant's counsel that Appellant refused to sign because there were undisclosed terms she did not agreed to and because she felt that she had been unduly influenced into signing the release because of her extreme anxiety, pain, sleep deprivation, and was under the influence of Oxycodone (See generally APPvII 424-433 and specifically ¶ 9, 18, 25, 26) (ADD13).

Thereafter, Defendant filed a motion to enforce the settlement and require the Appellant to sign the release. (APPvII 453-460). The Appellant filed an objection to the petition to enforce, which did not fully address the Appellant's medical issues, as the Court had stated, in an email on September 5, 2024, that the Appellant would be given a hearing on the motion to enforce the settlement agreement. (APPvII 489-495, 513). Said hearing was never held, and the motion was granted on September 4, 2024. (ADD13-16).

Thereafter, Appellant filed a motion asking the Court to set aside its decision on September 5, 2024. (APP510-512). Said motion was denied on October 15,

2024.  (ADD17-ADD20). The Defendant then filed a motion to dismiss the matter for the Appellant's failure to sign the release and dismiss the case, which the Court granted on February 6, 2025. (ADD21-22).  The Court then entered judgment in the Defendant's favor, and the Appellant filed this appeal. (ADD23-24).

## STANDARD OF REVIEW

This appeal, as pertaining to the decision to grant the summary judgment motion on the preclusive effect of the Labor Relations Management Act, is subject to de novo review as the court is reviewing issues decided as a matter of law. Abdallah v. Bain Capital LLC, 752 F.3d 114 (1st Cir. 2014).

This appeal as to the enforcement of the settlement agreement is subject to review for clear error. Roman-Oliveras v. Puerto Rico Elec. Power Authority, 797 F.3d 83 (1st Cir. 2015).

This appeal is subject to an abuse of discretion standard in denying the Rule 60 Motion to set aside its decision on the motion to enforce the settlement.  Ungar v. Palestine Liberation Organization, 599 F.3d 79 (1st Cir. 2010).

## QUESTIONS PRESENTED

1.     Did the Court err in determining that the Appellant's prevailing wage act claims were preempted by the Labor Relations Management Act at Summary judgment?

2.     Did the Court err in determining that the Appellant entered into a binding settlement agreement at the time of the mediation?

3.     Did the Court err in denying Appellant a hearing on her opposition to the petition to enforce when it indicated by email that it would grant that hearing?

## SUMMARY OF THE ARGUMENT

The Appellant essentially argues on two major topics, one that her claims under Rhode Island Wage Law were not preempted by the Labor Relations Management Act, and, second, that she should have been given a hearing on her opposition to the petition to enforce the settlement agreement which she argues should not have been granted.

With respect to the determination that the Appellant's claims under the Rhode Island Payment of Wages Act and Rhode Island Prevailing Wage Act were preempted by the Labor Relations Management Act, Appellant argues that this decision is in error.  In cases like <u>International Brotherhood of Electrical Workers, Local Union No. 126 v. American Lighting and Signalization LLC</u>, 2023 WL 5279133 (ED PA 2023), the court has found that "Plaintiff's claim for wages owed under the [Applicable] Prevailing Wage Act [are] not substantially dependent on an

analysis of the terms of the CBA because it is based on: (1) the prevailing wage rates and classifications approved by the Secretary, and (2) the custom and usage in the industry regarding those classifications." As Rhode Island Law determines what the rate of pay is and how it is assessed, there need be no reference to the CBA to calculate and determine the Appellant's claims. Accordingly, this decision was in error.

With respect to Appellant's claims that she was justified in not signing the settlement agreement, she had two separate arguments. 1. That the Agreement itself contained terms she did not agree to, and 2. The agreement was never reached because she was under undue influence at the time she agreed to the settlement at the settlement conference.

In the proposed release, there were terms that the Appellant did not agree to. Specifically, there was significant ambiguity in the terms no-rehire/no reapplication and non-defamation and confidentiality terms to make the agreement unenforceable. None of the above terms is definite in the sense that the limits or breadth of the terms were defined at the time of the mediation. See transcript of terms ADD18. They do not mention a no-rehire clause or its terms. At the time of the mediation, the Plaintiff agreed to a no-rehire, not that she "agrees she will not reapply for employment with Siemens, <u>or with any entity that is now or in the future owned, controlled, or acquired by Siemens</u>." (Emphasis added). There was

no definiteness as to what this term meant at the time of the mediation, and what was proposed in the draft settlement agreement is a very different provision from a simple agreement that she would not be rehired by Siemens.  Appellant did not expressly agree to this term.

The confidentiality clause is also problematic. It provides:

> To the extent permitted by law, Maccarone shall keep the financial terms and existence of this Agreement STRICTLY AND COMPLETELY CONFIDENTIAL. Other than as permitted in Paragraph 3(e) above, Maccarone agrees that she shall not disclose, divulge or publish, directly or indirectly, any information regarding the amount of the consideration set forth in Paragraph 1 to any person or organization other than (i) immediate family, (ii) accountants or attorneys when such disclosure is necessary for the accountants or attorneys to render professional services, (iii) to the taxing authorities, (iv) the unemployment compensation agency; or (v) when otherwise compelled by law. The terms of this paragraph include, but are not limited to, disclosures made to the media, present and former officers, employees, agents, and representatives of Siemens, and other members of the public.

(8A APPvII 469).

When Appellant was at the mediation, she was not specifically told exactly what this provision would mean. Nowhere was Appellant informed of exactly what this provision would mean prior to the settlement agreement setting it forth. It was not, therefore, an agreed-on term that was sufficiently definite that it could be enforced.

Saliently, a complete surprise in the agreement was the term that the Appellant would agree that she alone would be responsible for any tax obligations

that might exist, as is set forth in ¶ 2 (c), and indemnification of the Defendant on that issue. (APPvII 465). This is particularly outside the understanding of the parties, as it is the Defendant's obligation under federal law to properly pay its portion of employer Medicare/social security taxes that accrue on the wage portion of any amounts paid to the Appellant. 26 CFR § 601.401. In fact, Defendant tried to shift to Appellant the obligation to defend against those claims, which is particularly troublesome as it is solely its obligation to withhold one-half of and pay itself one-half of those employer-based taxes. This is nothing she should have thought was coming.

Common law on contract formation requires mutual assent as to all material terms in order for a valid contract to be formed. Commonwealth School Inc., v. Commonwealth Academy Holdings, LLC., 994 F.3d 77 (1st Cir. 2021). The terms cited above were incomplete and unclear and were not presented to the Appellant at the time of the settlement conference.

A court asked to declare a contract binding must determine that the contract is definite enough that the court can be "reasonably certain" of the scope of each party's duties. Downtown Inv. Ass'n v. Boston Metro. Bldgs., Inc., 81 F.2d 314, 319 (1st Cir.1936). None of the above terms is definite in the sense that the limits or breadth of the terms were defined at the time of the mediation.

Further, Appellant was also unduly influenced in her decision to enter a settlement at the mediation.

In <u>Lavoie v. North East Knitting, Inc</u>., 918 A.2d 225, 228-29 (R.I. 2007), "Undue influence long has been recognized in equity as a defense to or a means of challenging the validity of a will, deed, or contract. See <u>Tinney v. Tinney</u>, 770 A.2d 420, 435 (R.I.2001) (action to rescind a deed on grounds of undue influence); Caranci v. Howard, 708 A.2d 1321, 1322 (R.I.1998) (action to set aside a will on grounds of undue influence); <u>Stockett v. Penn Mutual Life Insurance Co</u>., 82 R.I. 172, 174, 175, 106 A.2d 741, 742, 743 (1954) (action to rescind a contract on grounds of undue influence). In such cases, equity provides an action for restitution or rescission to cure the dominant party's wrongful "substitution of [his or her will] for the free will and choice [of the subservient party]." <u>Filippi v. Filippi</u>, 818 A.2d 608, 630 (R.I.2003) (quoting <u>Tinney</u>, 770 A.2d at 437–38); see also 2 Dan B. Dobbs, Dobbs Law of Remedies, § 10.3 at 657 (2d ed.1993) (noting that "[t]he victim of undue influence is entitled to the same battery of restitutionary remedies as the victim of fraud or other wrongdoing").

Here, Appellant was experiencing severe anxiety, under the influence of narcotics, severely sleep deprived, and in a great deal of ongoing pain, which caused her to accept the agreement. (See generally APPvII 424-433 and

specifically ¶ 9, 18, 25, 26). As a result, she simply agreed with the judge in accepting the settlement.

Making matters worse, when Appellant briefed that issue in her opposition to the Defendant's petition to enforce, Appellant detrimentally relied on the representations of the court that it would provide her with a hearing at which she would be allowed to testify as to why she was unduly influenced. APPvII 513. The court then decided without giving her that hearing and allowing her to testify on that point. Had no hearing been intended, the briefing would have included additional information, such as that which was set forth in Appellant's affidavit (APPvII 424-433) and the Appellant's own testimony on the issue.

When presented with the affidavit as an offer of proof, the court determined that this was just the Appellant having buyer's remorse. ADD19. It granted the petition to enforce, denied a motion to reconsider, and ultimately dismissed the case as the Appellant would not sign the release.

## **ARGUMENT**

**1.    The Appellant's State law wage claims are not preempted by section 301 of the Labor Management Relations Ac**t.

Under the Doctrine of complete preemption: "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-64 (1987). Section 301 of the Labor Management Relations Act,

"LMRA," can operate in this fashion. See 29 U.S.C. § 185(a); <u>Allis-Chalmers</u> <u>Corp. v. Lueck</u>, 471 U.S. 202, 209-13 (1985). If applicable, "the preemptive force of [section] 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." <u>BIW</u> <u>Deceived v. Local S6, Industrial Union of Marine & Shipbuilding Workers of</u> <u>America</u>, 132 F.3d 828, 831 (1st Cir 1996) (quoting <u>Container Corp. v. Franchise</u> <u>Tax Bd.</u>, 463 U.S. 1, 23 (1983). Any claim falling under the carapace of section 301 is therefore treated as "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [section] 301." Id.

The doctrine of complete preemption is "misleadingly named." <u>Rueli v.</u> <u>Baystate Health, Inc.</u>, 835 F.3d 53, 57 (1st Cir. 2016) (quoting <u>Hughes v. United</u> <u>Air Lines, Inc.</u>, 634 F.3d 391, 393 (7th Cir. 2011) Although preemption is typically a defense to liability under state law, complete preemption serves a different function: with respect to the application of the well-pleaded complaint doctrine, it transmogrifies a claim purportedly arising under state law into a claim arising under federal law. See id.; <u>López-Muñoz v. Triple-S Salud, Inc,</u> 754 F.3d 1, 5 (1st Cir. 2014).

LMRA complete preemption has its limits, however. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-

bargaining agreement, is preempted by [section] 301." <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 211 (1985). It follows that section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id at 212. In the last analysis, state-law claims that require "only consultation with the CBA," as opposed to "actual interpretation" of the CBA, should not be extinguished." <u>Adames v. Exec. Airlines, Inc.</u>, 258 F.3d 7, 12 (1st Cir. 2001); see <u>Cavallaro v. Umass Memorial Healthcare, Inc.</u>, 678 F.3d at 1,7 (1st Cir. 2012).

"The line between consultation and interpretation has proven difficult to plot." <u>Lawless v. Stewart Health Care System, LLC</u>, 894 F. 3d 9, 18 (1st 2018). See also <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 124 n.18 (1994) (noting judicial confusion about scope of LMRA complete preemption); <u>Cavallaro</u>, 678 F.3d at 5 (remarking that Supreme Court "has never fully integrated" LMRA complete preemption cases into a unitary doctrine). But precise line-drawing is not essential here: at the time of removal, this case fell within the "interpretation" sector.

In <u>International Brotherhood of Electrical Workers, Local Union No. 126 v. American Lighting and Signalization LLC</u>, 2023 WL 5279133 (ED PA 2023), Appellants brought a claim for a violation of the Pennsylvania Prevailing Wage Act. 34 Pa. Code § 9.104. When faced with a preemption argument under Section 301, the Court found that: "Plaintiff's claim for wages owed under the

Pennsylvania Prevailing Wage Act [are] not substantially dependent on an analysis of the terms of the CBA because it is based on: (1) the prevailing wage rates and classifications approved by the Secretary, and (2) the custom and usage in the industry regarding those classifications. Because neither factor is substantially based on the CBA, Plaintiff's claim is not completely preempted by the Labor Management Relations Act." <u>International Brotherhood</u> at 2. This determination was made specifically because the PA Secretary of Labor determined the prevailing wage rates for public projects, and it is the secretary's determination alone. "Therefore, a court deciding a prevailing wage claim must look to the rates set pursuant to this authority, not those contained in a collective bargaining agreement." Id. This is the same decision reached by the New Jersey Courts in assessing their prevailing wage acts.

In <u>NJ Carpenters v. Tishman Constr Co</u>, 760 F.3d 297 (3rd Cir. 2014), the Court decided that there was no preemption of the New Jersey Prevailing Wage Acts. In doing so, it noted "§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law," citing <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 123 (1994). As noted by the Court in <u>Lividas</u>, "The right to prevailing wages is just such an inalienable right." See also N.J. Stat. Ann. § 34:11–56.40 (allowing workers to bring private actions to recover wages under the PWA and providing that "any agreement between such workman

and the employer to work for less than such prevailing wage shall be no defense to the action.") accord <u>Cipparulo v. David Friedland Painting Co.</u>, 139 N.J. Super. 142, 353 A.2d 105, 106 (App.Div.1976). "[Section] 301 preemption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of [CBAs]." <u>Lingle v. Norge Div. Magic Chef, Inc.</u>, 486 U.S. 399, 409 (1988). The Appellant has submitted a claim to be paid under the RIPWA. This right is not preempted by the LMRA.

In Rhode Island, a similar result as in PA and NJ should be reached. Under the Rhode Island prevailing wage act, R.I.G.L. § 37-13-7 is required to be put in every contract involving a municipality and workers engaged in construction projects. It states: " Every call for bids for every contract in excess of one thousand dollars ($1,000). . . shall contain a provision stating the minimum wages to be paid various types of employees which shall be based upon the wages that will be determined by the director of labor and training to be prevailing for the corresponding types of employees employed on projects of a character similar to the contract work in the city, town, village, or other appropriate political subdivision of the state of Rhode Island in which the work is to be performed." Further, the terms wages, scale of wages, wage rates, minimum wages, and

prevailing wages are also defined in § 37-13-7, as is a requirement of benefit payments being made on behalf of the Appellant.

Further, R.I.G.L. § 37-13-6 sets forth how the wages are to be paid to the Appellant. It provides that: "Before awarding any contract for public works . . . the proper authority shall ascertain from the director of labor and training the general prevailing rate of the regular, holiday, and overtime wages paid and the general prevailing payments on behalf of employees only, to lawful welfare, pension, vacation, apprentice training, and educational funds (payments to the funds must constitute an ordinary business expense deduction for federal income tax purposes by contractors) in the city, town, village, or other appropriate political subdivision of the state in which the work is to be performed, for each craft, mechanic, teamster, laborer, or type of worker needed to execute the contract for the public works or school transportation services." R.I.G.L. § 37-13-17 then provides Appellant with a private right of action if these laws are not followed.

There was no requirement, therefore, to reference the contract in this instance to determine the amounts the Appellant was entitled to be paid or how her overtime or benefits were to be paid. They were determined by the Rhode Island Statute.

Like the claims in New Jersey and Pennsylvania, the Appellants' claim

under the RIPWA is not preempted by the LMRA because it exists independently of any CBA. Proving a PWA violation does not require any reference to or analysis of any CBA. It simply requires comparing the wages that Appellants were paid to those provided in the PWA. This is a factual question that, just as it does not turn on the interpretation of any ERISA plan, does not turn on the interpretation of any CBA. The carpenters' right to prevailing wages is grounded in the PWA and would exist even in the absence of any CBA.

As courts have stated, although the amount owed to the employees under the PWA may be the same amount owed by virtue of their CBA, such "parallelism" does "not render the state-law analysis dependent upon the [CBA] analysis." Kline v. Security Guards, Inc., 386 F.3d 246, 254 (3rd Cir. 2004) (quotation marks omitted). The Supreme Court has explicitly held that even if dispute resolution pursuant to a CBA and a state law would require addressing "precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle, 486 U.S. at 410.

Appellant raises the same exact arguments with respect to her claims under R.I.G.L. § 28-14-20, the Rhode Island Wage Act, which allows an independent cause of action for all wages not paid during the same week, for the same reasons, as even outside the CBA, the amounts Appellant would be owed under RI

Minimum Wage Law and under the RI Overtime Statutes, are governed by state law and not any collective bargaining agreement.

**2. <u>The Court erred when it denied the Appellant the opportunity to be heard in her opposition to the petition to enforce the settlement agreement.</u>**

Here, the Appellant relied on a representation from the Court that she would be provided a hearing on the petition to enforce the settlement agreement and stated in her brief that she intended to put evidence before the court to support her contention that she was subjected to undue influence at the time of the mediation. APPvII 489, 494, 513. Despite its email to counsel, the Court did not hold a hearing on the motion, and as a result Appellant was not allowed to put forth the evidence she would have at said hearing to support her claim. APPvII 489. She did, thereafter, make an offer of proof, via affidavit, which was not credited by the Court. APPvII 424-433.

'A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations, he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentations.'" <u>Lagen v. Lagen</u>, 14 Ill.App.3d 74, 81, 302 N.E.2d 201(1973) (commas added) (quoting <u>Dickinson v. Dickinson</u>, 305 Ill. 521, 527–28, 137 N.E. 468 (1922)). The Appellant relied on an email from the court

that stated that she would be provided with a hearing when dealing with her undue influence claim.  APPvII 513. Said reliance cannot be said to be unreasonable. Indeed, Judges and Counsel have obligations to act with candor in court proceedings.   See commentary of Canon 2 A, Guide to Judicial Conduct Pt. A: Codes of Conduct, Rule 3.3 Candor Toward the Tribunal, Rhode Island Disciplinary Rules of Professional Conduct.  That isn't to say that Appellant believes that there was an intentional misrepresentation to her by the Court, but it is to say that Appellant relied on the court's representation that she would get a hearing to her detriment, which is fundamentally unfair.  It also violates the holding of Fidelity v. Guar. Ins. Co. v. Star Equipment Corp., 541 F.3d 1, 5 (1st Cir. 2008), where the Court stated: "Where… [a] settlement collapses before the original suit is dismissed, the party seeking to enforce the agreement may file a motion with the trial court. The trial court may summarily enforce the agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement. When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues."

Appellant seeks to have the matter remanded to have a hearing on her opposition to the petition to enforce and her undue influence claim. The Court's

statement to counsel that a hearing would be held was relied on to the Appellant's detriment.

### 3.    There was evidence to support a finding that the Appellant was unduly influenced into agreeing with the settlement.

Had Appellant been allowed to testify, as stated in her affidavit, she would have testified that at the time of the mediation, she was under the influence of narcotics, because of her knee pain, severely sleep deprived, and in a serious and consisted of pain that had continued for more than a year at that point.

As noted in In re The Bible Speaks, 73 B.R. 848, 858 (Bank. D. Ma. 1987), "Specific undue influence cases tend to be lonely islands of facts in an ocean of law; what constitutes undue influence in one case will not necessarily constitute undue influence in a similar case." "In making a determination of undue influence in a particular case, the court must normally consider all the circumstances surrounding a disposition, including the relationship between the parties, the physical and mental condition of the donor, the reasonableness and nature of the disposition, and the personalities of the parties."

As stated by the Court in Lamore v. Fleet National Bank, 2006 WL 3293936 (RI. Sup. 2006). "acts and contracts of persons who are of weak understandings, and who are thereby liable to imposition, will be held void in courts of equity, if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented,

or overcome by cunning or artifice, or undue influence." Citing <u>Anthony v. Hutchins</u>, 10 R.I. 165, 176 (1872). Undue influence occurs when the free will of one disposing of property is overcome and in its place is substituted the will of a dominant party. <u>Caranci v. Howard</u>, 708 A.2d 1321, 1324 (R.I.1998) (citing <u>Marcinko v. D'Antuono</u>, 104 R.I. 172, 181 (1968)). Ordinarily, one asserting undue influence as a basis for cancellation of an instrument bears the burden of showing such influence by clear and convincing evidence. <u>Passarelli v. Passarelli</u>, 94 R.I. 157, 159 (1962) (citing <u>Beaudoin v. Beaudoin</u>, 85 R.I. 465 (1957); <u>Dante v. Quilietti</u>, 71 R.I. 4, 41 A.2d 306 (1945)).

As noted by <u>State v. Zambawa</u>, 787 N.W. 2d 177 (Minn 2010), in the context of a confession: "Lack of sleep and intoxication are factors that may be considered in determining whether a defendant's will has been overborne, but a lack of sleep does not automatically render a defendant's statement involuntary."

If given a hearing, there is easily evidence the Appellant could have put forward that would have proved that she was unduly influenced when she agreed to the settlement on March 6, 2024. Accordingly, Appellant requests a remand for a promised hearing on this issue, and a vacation of those orders that ultimately led to the dismissal of this case, as she refused to sign the release.

**4.     <u>There were terms in the release that were not agreed to in the settlement conference, and as a result, the Appellant should not have been ordered to sign the release.</u>**

As noted in <u>Quint v. A.E. Staley Mfg. Co.</u>, 246 F.3d 11 (1st Cir 2001) when determining is there is an enforceable settlement, "[t]he district court's determinations are mixed questions of fact and law, to which we apply a sliding scale standard of review under the label of clear error review." Id. "Where, as here, the underlying action is brought pursuant to a federal statute, whether there is an enforceable settlement is a question of federal, rather than state, law." Id citing <u>Malave v. Carney Hosp.</u>, 170 F.3d 217, 220 (1st Cir.1999).

To enforce this agreement, the Defendant must prove that there is "a bargain in which there is a manifestation of mutual assent to the exchange and consideration." Restatement (Second) of Contracts § 17 (1981). Definiteness is an important characteristic of a binding contract because a court can only enforce an agreement if it can specify the obligations undertaken by the parties. See <u>Soar v. National Football League Players' Ass'n</u>, 550 F.2d 1287, 1289–90 (1st Cir.1977).

The oral agreement here, sought to be enforced must be definite enough that the court can be "reasonably certain" of the scope of each party's duties. <u>Downtown Inv. Ass'n v. Boston Metro. Bldgs., Inc.</u>, 81 F.2d 314, 319 (1st Cir.1936).

In the proposed release, there were terms the Appellant did not agree to, and significant ambiguity between what she agreed to and what was presented. Specifically, there was significant ambiguity in the terms no-rehire/no reapplication

and non-defamation and confidentiality terms to make the agreement unenforceable.  None of the above terms is definite in the sense that the limits or breadth of the terms were defined at the time of the mediation. See transcript of terms ADD18.

At the time of the mediation, the Plaintniff agreed that she would not seek to be rehired by the Defendant, she did not agree, as the release states that "she will not reapply for employment with Siemens, <u>or with any entity that is now or in the future owned, controlled, or acquired by, Siemens</u>." The difference between not seeking to be rehired by Siemens, and some future being non-hireable or employable by companies it might later acquire or be acquired by is too different a restriction. Appellant did not expressly agree to this term.

The confidentiality clause is also problematic. It provides: "To the extent permitted by law, Maccarone shall keep the financial terms and existence of this Agreement STRICTLY AND COMPLETELY CONFIDENTIAL. Other than as permitted in Paragraph 3(e) above, Maccarone agrees that she shall not disclose, divulge or publish, directly or indirectly, any information regarding the amount of the consideration set forth in Paragraph 1 to any person or organization other than (i) immediate family, (ii) accountants or attorneys when such disclosure is necessary for the accountants or attorneys to render professional services, (iii) to the taxing authorities, (iv) the unemployment compensation agency; or (v) when

otherwise compelled by law. The terms of this paragraph include, but are not limited to, disclosures made to the media, present and former officers, employees, agents, and representatives of Siemens, and other members of the public." (8A APPvII 469).

When Appellant was at the mediation, she was not specifically told exactly what this provision would mean. What the term might mean, by being described in some shorthand, non-disclosure, confidentiality clause statement, is not sufficient to make it a fully agreed-on term that is sufficiently definite that it can be enforced.

Saliently, Appellant never agreed to shift liability for taxes to herself for the payments from the Defendant. This was a complete surprise in the agreement. The proposed settlement agreement provides that the Appellant agrees that she alone would be responsible for any tax obligations that might exist, as is set forth in ¶ 2 (c), and indemnification of the Defendant on that issue. (APPvII 465). This is particularly outside the understanding of the parties, as it is the Defendant's obligation under federal law to properly pay its portion of employer Medicare/social security taxes that accrue on the wage portion of any amounts paid to the Appellant. 26 CFR § 601.401. In fact, Defendant tried to shift to Appellant the obligation to defend against those claims, which is particularly troublesome as it is solely its obligation to withhold one-half of and pay itself one-half of those employer-based taxes. This is nothing she should have thought was coming. This

is not a term that any normal Appellant would expect they would be faced with when they are being paid wages for which the Defendant is responsible under Federal law for paying. How this cannot be an additional material term of the contract is beyond the Appellant's understanding.

Common law on contract formation requires mutual assent as to all material terms in order for a valid contract to be formed. <u>Commonwealth School Inc., v. Commonwealth Academy Holdings, LLC</u>., 994 F.3d 77 (1st Cir. 2021). The terms cited above were incomplete and unclear and were not presented to the Appellant at the time of the arbitration. There was no mutual assent to them.

A court asked to declare a contract binding must determine that the contract is definite enough that the court can be "reasonably certain" of the scope of each party's duties. <u>Downtown Inv. Ass'n v. Boston Metro. Bldgs., Inc.</u>, 81 F.2d 314, 319 (1st Cir.1936). None of the above terms is definite in the sense that the limits or breadth of the terms were defined at the time of the mediation. There was, therefore, no agreement and no settlement.

Accordingly, the Appellant requests that the matter be remanded for trial.

## <u>CONCLUSION</u>

WHEREFORE, the Appellant requests that this matter be remanded for further action by the District Court. Appellant requests that:

1. The Dismissal order and judgment be vacated and the matter returned to the District Court with a finding that there was no settlement agreement, and the terms of the proposed release were not agreed to, or

2. That the matter be remanded for a hearing on the Appellant's opposition to the motion to enforce the settlement agreement, and

3. Enter an order that the Court's determination that the Appellant's state law wage claims were precluded was in error.

<u>s/ Sonja L. Deyoe</u>
Sonja L. Deyoe #1144813
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
sld@the-straight-shooter.com

May 20, 2025

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 5,879 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2020 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(a)(7)(C)(i), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Sonja L. Deyoe
Sonja L. Deyoe #1144813
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
sld@the-straight-shooter.com

May 20, 2025

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I filed the foregoing Brief for Plaintiff-Appellant with

the Clerk of the United States Court of Appeals for the First Circuit via the

CM/ECF system this 20th day of May 2025 to be served on the following counsel

of record via ECF:

Jillian S. Folger-Hartwell
Dimitrios Markos
LITTLER MENDELSON
One Financial Plaza, Suite 2205
PROVIDENCE, RI 02903
 (401) 824-2112

Counsel for Defendant-Appellee

/s/ Sonja L. Deyoe
Sonja L. Deyoe #1144813
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
sld@the-straight-shooter.com
May 20, 2025

# ADDENDUM

# TABLE OF CONTENTS ADDENDUM

Memorandum and order on summary judgement………….…..……………ADD01

Memorandum and order enforcing settlement agreement…………………ADD013

Order denying motion to reconsider order granting motion to enforce……ADD017

Order granting motion to dismiss……………………………………….ADD021

Judgment…………………………………………...………………………ADD023

Notice of Appeal……………………………………..………………..………ADD024

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ANN MARIE MACCARONE,<br>    Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. No. 20-259-JJM-LDA |
| SIEMENS INDUSTRY, INC.,<br>    Defendant. | ) ) ) ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief Judge, United States District Court.

Ann Marie Maccarone formerly worked at Siemens Industry, Inc. ("Siemens") as a union electrician. She brings a claim against her former employer for unpaid wages and sex discrimination under several state and federal causes of action. The Court GRANTS IN PART AND DENIES IN PART Siemens' Motion for Summary Judgment. ECF No. 21.

Siemens employed Ms. Maccarone as a journeyman wireman electrician beginning in May 2016. Her job duties primarily involved maintaining and repairing streetlights, i.e., converting them to light emitting diode streetlights. During her two-years of employment, Ms. Maccarone alleges that she was not paid for work performed or for overtime because Siemens' system for recording the time, mCompanion, did not work properly for her. She also alleges that she was mistreated due her gender. Ms. Maccarone resigned from her job in May 2018.

Ms. Maccarone sued in state court, which Siemens then removed to this Court based on federal question jurisdiction. Her Complaint contains five counts:

| Count I: | Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"); |
|---|---|
| Count II: | Rhode Island Minimum Wage Act, R.I. Gen. Laws § 28-12-1 ("RIMWA") and the Rhode Island Payment of Wages Act, R.I. Gen. Laws § 28-14-1 ("RIPWA"); |
| Count III: | Rhode Island Prevailing Wages Law, R.I. Gen. Laws § 37-13-17 ("RIPWL"); |
| Count IV: | Rhode Island Civil Rights' Act for gender discrimination, R.I. Gen. Laws § 42-112-1 ("RICRA"); and |
| Count V: | Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-1 ("RIWPA"). |

Siemens moved for summary judgment on all counts, which the Court will address here in the order they appear in the complaint.

## I.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* More particularly,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (citation omitted). As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an

2

ADD002

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (internal quotation marks omitted) (citations omitted).

## II.  DISCUSSION

### A. FAIR LABOR STANDARDS ACT (Count I)

#### 1. *Statute of Limitations*

Siemens seeks to limit the span of Ms. Maccarone's claims period because of the two-year statute of limitations for FLSA claims. That would mean that, because she filed suit on April 10, 2020, her claim period would run for six weeks from April 10, 2018 and end on May 27, 2018, the day she quit. Ms. Maccarone advocates that a three-year statute of limitations applies to FLSA claims where an employer "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988) (quoting *Brock v. Richland Shoe Co.*, 799 F.2d 80, 82 (1986)). By her calculation, she alleges she is owed back wages for a little more than a year—from April 10, 2017 until May 27, 2018.

3

Ms. Maccarone argues that there is sufficient evidence in the record that a jury could reasonably decide that Siemens acted willfully in failing to pay her the proper wage. Essentially, she asserts that she consistently complained that her time was not being recorded correctly in mCompanion and she could not get mCompanion to work for her, but Siemens did nothing in response. Siemens knew her time was not being recorded and that she was not being fully paid and, in choosing to ignore it, recklessly disregarded that violation. Siemens responds by claiming that the evidence does not show that it acted willfully, but that her pay irregularities stemmed from user error because Ms. Maccarone did not enter her time correctly into mCompanion.

Based on the record as it stands, there are disputed issues of fact as to Siemens' intent or state of mind during the time in question. "Where questions of fact are presented, statute of limitations defenses are ordinarily submitted to the jury." *Meléndez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30, 38 (1st Cir. 2001). It is unclear which version is factually correct so the Court will defer this factual dispute to the jury's determination.

### 2. Wage Claims

Next, Siemens argues that it is entitled to summary judgment on Ms. Maccarone's wage claims because there is no evidence in the record that Siemens owes her any additional compensation. Siemens urges the Court to discount and discard Ms. Maccarone's evidence and testimony about hours she worked for which Siemens did not pay her as inadmissible and self-serving, but they do raise disputes

ADD004

about the material facts that she needs to prove her wage claims. These disputes are better decided by a jury who will listen to her testimony, along with whatever admissible evidence she may seek to introduce or use to refresh her recollection, to determine whether her testimony and supporting evidence is credible. Likewise, a jury could consider all the facts that Siemens claims discredits her records and find that Ms. Maccarone has not met her burden. Considering these disputes, the Court DENIES entering summary judgment on Ms. Maccarone's FLSA wage claims in Count I.

### B. STATE LAW WAGE CLAIMS (Counts II & III)

Ms. Maccarone brings two claims under three state laws alleging that Siemens did not properly pay her under the CBA. Siemens moves for summary judgment on these claims, arguing that they are preempted under Section 301 of the Labor Management Relations Act ("LMRA") because they require interpretation of the CBA to be resolved. Section 301 specifically allows "[s]uits for violation of contracts between an employer and a labor organization representing employees ...." 29 U.S.C. § 185(a). "In creating § 301 of the LMRA, Congress intended 'that a comprehensive, unified, body of federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements.'" *Fant v. New England Power Serv. Co.*, 239 F.3d 8, 14 (1st Cir. 2001) (quoting *The Developing Labor Law*, at 1698-99 (Patrick Hardin et al. eds., 3d ed. 1992) (1971)). Thus, § 301 preempts a state law claim when "'the asserted state law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'"

ADD005

*Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54–55 (1st Cir. 2011) (quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)).

A state law claim can "depend on the meaning" of a CBA if either (1) "'it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement,'" or (2) "'its resolution arguably hinges upon an interpretation of the collective bargaining agreement.'" *Id.* "In deference to the agreed-to remedies, courts ordinarily dismiss claims falling within such provisions—namely, those intertwined with interpretation and application of the CBA—so long as relief can be provided within the CBA process." *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 6 (1st Cir. 2012) (describing this process as preemption, deference, or exhaustion). However, if a "state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).

Ms. Maccarone's claims are rooted in her allegations that Siemens failed to pay her correct pay rate, failed to pay for all the hours she worked performing non-electrical work, and failed to pay her overtime for hours worked more than eight hours per day. Article 3 of the CBA specifically addresses all her wage claims. Sections 3.01 (a) & (b) of the CBA defines and discusses the parameters of overtime pay, employee shifts, and workday and work week schedules that would dictate Ms. Maccarone's pay. *See* ECF No. 22-7 at 9. And Section 3.12 (b) outlines an alternate "prevailing practice" governing overtime pay as contemplated by the RIPWL § 37-13-10. *Id.* at 13. The resolution of her state statutory claims based on

ADD006

allegations that Siemens failed to pay her correct pay rate, failed to pay for all the hours she worked performing non-electrical work, and failed to pay her overtime for hours worked in excess of eight hours per day are dependent on an interpretation of the CBAs' terms and on the contractual labor relationship between Ms. Maccarone and Siemens. *Cavallaro*, 678 F.3d at 8 (whether wages are owed implicated "peculiarities of industry-specific wage and benefit structures" found in the CBA so required interpretation); *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 63 (1st Cir. 2021) (overtime); *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 14-15 (1st Cir. 2001) (overtime); *Hamilton v. Partners Healthcare Sys.*, 209 F. Supp. 3d 397, 410 (D. Mass. 2016) (underpayment of wages and overtime). Therefore, because the Court would have to interpret the terms of the CBA to resolve her RIPWL, RIPWA, RIMWA claims, it finds that Ms. Maccarone's state law claims against Siemens are preempted under § 301 and dismisses Counts II and III.

## C. RICRA CLAIM FOR GENDER DISCRIMINATION (Count IV)

"The Rhode Island Civil Rights Act provides broad protection against all forms of discrimination in all phases of employment." *Ward v. City of Pawtucket Police Dep't*, 639 A.2d 1379, 1381 (R.I. 1994). In a gender-based disparate treatment claim based on the three-step *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework, Ms. Maccarone must first set forth a prima facie case. She must prove that she is a member of a protected class, she was satisfactorily performing her job, she suffered an adverse employment action and her employer tried to replace her with a comparable individual. *Smith v. Stratus Comput., Inc.*, 40 F.3d 11, 15 (1st Cir. 1994); *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13, 21 (R.I.

ADD007

2005).  Presuming she meets the low bar of proving a prima facie case, the burden then shifts to Siemens to put forth a nondiscriminatory reason for their actions. *Soto–Feliciano v. Villa Cofresi Hotels, Inc.*, 779 F.3d 19, 23 (1st Cir. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).  Siemens has done that so then Ms. Maccarone must show that the stated reason is pretext for gender discrimination. She may try to show "that others similarly situated to h[er] in all relevant respects were treated differently by the employer." *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003) (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)).

"'Reasonableness is the touchstone' when considering comparators in a disparate treatment case; that is, 'while the plaintiff's case and the comparison cases that [s]he advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances.'" *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 114 (1st Cir. 2015) (quoting *Conward*, 171 F.3d at 20).  The Court asks whether "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 64 (1st Cir. 2004).

8

ADD008

To support her claim of gender discrimination, Ms. Maccarone submits these facts:

33. Plaintiff knows of one man who entered the time into his time sheet portion of mCompanion and was paid where she wasn't.

\*\*\*\*\*

36. Plaintiff testified that she was the only person with a pay problem that was not addressed and the only one give[n] more work than anybody else.

37. To Plaintiff's knowledge, men either did conversion or outage work, not both, but she had to do both.

38. Plaintiff was told that she was the only person doing outage work by Defendant's employee Alexis on numerous occasions.

39. When men made complaints about not getting correct state taxes taken out of their check, it was fixed.

\*\*\*\*\*

41. Plaintiff worked by herself.  Plaintiff did the inventory of the warehouse, the unloading of the trucks, and pick-ups of items at FedEx and men didn't.

42. Plaintiff did the work for Siemen's [sic] in the entire state of Rhode Island and did not get help.

ECF No. 27 at 4-5.  Each of these facts is supported solely by Ms. Maccarone's own deposition testimony.  ECF No. 27-1.  There is no evidence in the record on which a jury could reasonably conclude that the unidentified men Ms. Maccarone speaks of in her deposition are appropriate comparators in any respect.  There is no evidence

9

ADD009

before the Court upon which a jury could reasonably determine that any of those incidents cited by Ms. Maccarone are roughly equivalent.

Ms. Maccarone also alleged that the Siemens' work environment was hostile such that she felt discriminated against due to her gender. "[D]iscriminatory conduct [that is] so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). To succeed in a hostile work environment claim, Ms. Maccarone must prove: "(1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established." *O'Rourke*, 235 F.3d at 728.

Upon reviewing the entire summary judgment record, the Court does not find any evidence sufficient to establish a claim of hostile work environment. There is no evidence upon which a reasonable jury could find that Ms. Maccarone faced unwelcome sexual harassment or that the harassment was severe or pervasive enough to alter the conditions of her employment and created an abusive work

environment.  Ms. Maccarone's claim under RICRA for discrimination based on gender fails for lack of proof; the Court DISMISSES Count IV.

### D. RIWPA CLAIM (Count V)

Finally, Siemens moves for summary judgment on Ms. Maccarone's RIWPA claim.  R.I. Gen. Laws § 28-50-1.  Ms. Maccarone asserts that she repeatedly complained to Siemens employees about its failure to pay her correctly.  To make out a prima facie case under the RIWPA, Ms. Maccarone must demonstrate that (1) she engaged in protected whistleblowing conduct as defined by that statute; (2) she suffered an adverse employment action at the time or later; and (3) the adverse action was causally related to the protected conduct.  R.I. Gen. Laws § 28-50-1 et seq.

Ms. Maccarone has not produced evidence of either an adverse employment action or for causation as the statute requires.  She voluntarily resigned and despite blaming her resignation on Siemens' failure to pay her, a voluntary resignation has not been found to be tantamount to an adverse employment action and thus cannot support a RIWPA claim.  *See Cohen v. FGX Int'l Inc.*, No. 18-380 WES, 2019 WL 2526728, at *7 (D.R.I. June 17, 2019).  Alternatively, Ms. Maccarone states that the adverse employment action was Siemens not paying her what she was legally owed.  But that is not an adverse employment action under the RIWPA either–it is the action giving rise to this complaint.  And even if that were considered an adverse employment action, nothing in the record suggests that Siemens took any adverse employment action (like refusing to pay her wages she was owed) because she complained to Siemens employees about wages that she was legally owed.  The Court

ADD011

finds that Siemens is entitled to summary judgment on Ms. Maccarone's RIWPA claim. Count V is DISMISSED.

## III.    CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Siemens' Motion for Summary Judgment. ECF No. 21. Counts II, III, IV, and V are dismissed; Count I remains.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

December 15, 2023

12

ADD012

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

|  |  |  |
|---|---|---|
| ANN MARIE MACCARONE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-cv-259-JJM-LDA |
| | ) | |
| SIEMENS INDUSTRY, INC., | ) | |
|     Defendant. | ) | |
| | ) | |

**ORDER**

Plaintiff Ann Marie Maccarone's Complaint alleged state and federal wage and hour law violations by her employer, Defendant Siemens Industry, Inc. After three years of pretrial activity, and after receiving a jury trial notice from the Court (ECF No. 33), a Magistrate Judge conducted a settlement conference, with both parties and their attorneys. The Magistrate Judge reported to the Court that the case had settled, so the Court canceled the jury selection and empanelment. *See* Docket Entry dated Apr. 11, 2024. Siemens prepared the Settlement Agreement and Release and the Stipulation of Dismissal. ECF No. 39-1. Ms. Maccarone refused to sign any of the documents and now claims there was no binding settlement. Siemens filed a Motion to Enforce Settlement Agreement. ECF No. 38. Ms. Maccarone objects. ECF No. 41.

"Settlement agreements enjoy great favor with the courts 'as a preferred alternative to costly, time-consuming litigation.' Thus, a party to a settlement agreement may seek to enforce the agreement's terms when the other party refuses to comply." *Fidelity & Guar. Ins. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008)

(citations omitted). Courts must enforce a settlement agreement where the parties "possess and manifest an objective intent to be bound by it." *Mendes v. Kirshenbaum & Kirshenbaum Attorneys at Law, Inc.*, 309 A.3d 1176, 1180 (R.I. 2024) (citing *O'Donnell v. O'Donnell*, 79 A.3d 815, 820 (R.I. 2013)). The law does not "permit litigants to avoid their agreed-upon obligations solely because a party later decides that the agreement no longer serves as the ideal resolution of their dispute." *Id.* (citing *Ballard v. SVF Found.*, 181 A.3d 27, 40 (R.I. 2018)). A court "may summarily enforce the agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement. When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues." *Fidelity & Guar. Ins.*, 541 F.3d at 5.

Here, there are no disputed material facts. There is no question that the parties came to an agreement and there is no question about the material facts of the agreement. The Magistrate Judge, at the conclusion of the settlement conference with the attorneys and the parties present—including Ms. Maccarone—recorded the agreement, reiterated all material terms[1] of the agreement, and all parties agreed. The recording captured the agreement:

---

[1] "The material terms of a contract generally include subject matter, price, and payment terms. In the context of settlement agreements, court have found that the amount to be paid and the claimant's release of liability are the material terms. By contrast, provisions that are not indispensable and not necessary for the parties to understand how they are expected to perform the contract itself are not material terms of the contract." *Blackstone v. Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014) (internal quotations and citations omitted).

ADD014

Ms. Maccarone is on the line [Zoom]. . .

The mediation has concluded in a settlement. . . [The court-annexed mediation] lead to an agreement of the parties to settle the case. The essential terms of the agreement are as follows: the Defendant will pay the Plaintiff $84,000; . . .once paperwork is executed the settlement proceeds would be expected in approximately 30 days . . . The parties have agreed that the Plaintiff will be afforded a neutral reference in the event of any inquiry; the Settlement Agreement will include a non-defamation clause, a no-rehire clause and a confidentiality clause. The parties agree that the FLSA [Federal Labor Standards Act] aspect of the case will require court approval of the settlement and the confidentiality clause permits Ms. Maccarone to advise anyone to whom she cares to speak to, that the case was resolved to her satisfaction . . . In consideration for all of that, the case will be dismissed with prejudice and apart from the consideration of $84,000 the parties will bear their own fees and costs . . . There should be a full release of all claims, . . . and the settlement amount will have employment taxes withheld . . . pursuant to federal law. [The attorneys for the parties all agreed with the Magistrate Judge's recitation].

ECF No. 45.[2]    The Settlement Agreement and Release, and the Stipulation of Dismissal reflect the agreed-to terms. *See* ECF No. 39-1.

Ms. Maccarone raises three facts[3] that she alleges are material that the parties did not agree to: (1) ambiguity in the no-rehire/no-reapplication provision; (2) confidentiality clause; and (3) tax obligations. None of these facts are material to the Settlement Agreement. *See Blackstone*, 63 F. Supp. 3d at 77. And the parties did not appear to negotiate any of these facts during the session with the

---

[2] The Court placed a recording of the agreement on the docket (ECF No. 45) under seal and emailed a copy of it to the attorneys for the parties.

[3] Ms. Maccarone requests a court hearing so she can testify about alleged undue influence (ECF No. 41 at 5-6). The Court denies that request because Ms. Maccarone does not set forth any factual basis for her unsupported allegation.

ADD015

Magistrate Judge before all parties agreed that they had reached a settlement. Therefore, the Court finds that Ms. Maccarone has not shown that there are any material facts NOT reflected in the written Settlement Agreement preventing its enforcement.

The Court GRANTS Siemens' Motion to Enforce the Settlement Agreement. ECF No. 38.[4] Ms. Maccarone shall sign the Settlement Agreement and Release and authorize her attorney to sign and file the Stipulation of Dismissal, on or before September 16, 2024, or the Court will entertain a Motion to Dismiss the case with prejudice from Siemens for failure to follow the Court's Order.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief United States District Judge

September 4, 2024

---

[4] Under the Fair Labor Standards Act, the Court finds the settlement to be fair and reasonable.

4

ADD016

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ANN MARIE MACCARONE,<br>          Plaintiff,<br><br>          v.<br><br>SIEMENS INDUSTRY, INC.,<br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 20-cv-259-JJM-LDA |

## ORDER

The Magistrate Judge reported to the Court that this case had settled, so the Court canceled the jury selection and empanelment. *See* Docket Entry dated Apr. 11, 2024. Siemens prepared the Settlement Agreement and Release and the Stipulation of Dismissal. ECF No. 39-1. Ms. Maccarone refused to sign any of the documents and claims there was no binding settlement. Siemens moved to Enforce Settlement Agreement. ECF No. 38. Ms. Maccarone objected. ECF No. 41. This Court granted the motion to enforce the settlement. ECF No. 46.

There is no question that the parties came to an agreement and there is no question about the material facts of the agreement. The Magistrate Judge, at the end of the settlement conference with the attorneys and the parties present—including Ms. Maccarone—recorded the agreement, reiterated all material terms[1] of the agreement, and all parties agreed. The recording captured the agreement:

---

[1] "The material terms of a contract generally include subject matter, price, and payment terms. In the context of settlement agreements, court have found that the amount to be paid and the claimant's release of liability are the material terms. By contrast, provisions that are not indispensable and not necessary for the parties to

Ms. Maccarone is on the line [Zoom]. . .

The mediation has concluded in a settlement. . . [The court-annexed mediation] lead to an agreement of the parties to settle the case. The essential terms of the agreement are as follows: the Defendant will pay the Plaintiff $84,000; . . .once paperwork is executed the settlement proceeds would be expected in approximately 30 days . . . In consideration for all of that, the case will be dismissed with prejudice and apart from the consideration of $84,000 the parties will bear their own fees and costs . . . There should be a full release of all claims, . . . and the settlement amount will have employment taxes withheld . . . pursuant to federal law. [The attorneys for the parties all agreed with the Magistrate Judge's recitation].

ECF No. 45.[2]   The Settlement Agreement and Release, and the Stipulation of Dismissal reflect the agreed-to terms. *See* ECF No. 39-1.

Ms. Maccarone asks this Court to reconsider its Order. ECF No. 47. In support of her motion—in reply—she submits an affidavit claiming that she experienced "undue influence." There is no independent evidence of Ms. Maccarone's impaired physical or mental capacity and there is no evidence at all that any undue influence was exerted.

Also, Ms. Maccarone's arguments could have been raised in response to Siemens' Motion to Enforce the Settlement Agreement. On this basis alone, denial of Ms. Maccarone's motion is appropriate. Ms. Maccarone asserts the Court promised her a hearing. Even still, absent a genuine question of fact, the Court need not grant

---

understand how they are expected to perform the contract itself are not material terms of the contract." *Blackstone v. Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014) (internal quotations and citations omitted).

[2] The Court placed a recording of the agreement on the docket (ECF No. 45) under seal and emailed a copy of it to the attorneys for the parties.

ADD018

Ms. Maccarone a hearing to discuss her alleged feelings of undue influence. *Fidelity v. Star Equip.*, 541 F.3d 1, 5 (1st Cir. 2008) ("The trial court may summarily enforce the [settlement] agreement, [if] there is no genuinely disputed question of material fact regarding the existence or terms of that agreement. When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues."). Ms. Maccarone could have, but did not, present the facts she alleges created undue influence on her to the Court in opposition to Siemens' Motion to Enforce the Settlement Agreement. But in the argument section in her memorandum of law in opposition, Ms. Maccarone did not present a single fact supporting her assertion that she was subject to undue influence. The first time the affidavit appeared was over a month after the Order was entered and after both the motion and opposition were filed.

This case smacks of buyer's remorse. Buyer's remorse is not a valis reason for denying enforcement of a knowing and voluntary settlement. *See Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 34 (1st Cir. 2022); *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002) (a right is waived if intentionally relinquished or abandoned and forfeited if not timely asserted.)

Ms. Maccarone shall sign the Settlement Agreement and Release and authorize her attorney to sign and file the Stipulation of Dismissal, on or before October 25, 2024, or the Court will entertain a Motion to Dismiss the case with prejudice from Siemens for failure to follow the Court's Order.

3

The Court DENIES Ms. Maccarone's Motion to Reconsider its Order granting

Siemens' Motion to Enforce the Settlement Agreement.

IT IS SO ORDERED.

_____

John J. McConnell, Jr.
Chief United States District Judge


October 15, 2024

ADD020

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

_____

)
ANN MARIE MACCARONE,                )
     Plaintiff,                        )
                  )
     v.                               )     C.A. No. 20-cv-259-JJM-LDA
                  )
SIEMENS INDUSTRY, INC.,              )
     Defendant.                        )
_____)

### ORDER

    This matter is before the Court on Defendant Siemens Industry, Inc.'s Motion to Dismiss the Complaint under Fed. R. Civ. P. 41(b) for failure of Plaintiff Ann Marie Maccarone to sign the settlement agreement and release. ECF No. 55. A brief history of how we got here procedurally is in order.

    After three years of pretrial activity, and after receiving a jury trial notice from the Court (ECF No. 33), a Magistrate Judge conducted a settlement conference, with both parties and their attorneys. The Magistrate Judge reported to the Court that the case had settled, so the Court canceled the jury selection and empanelment. *See* Docket Entry dated Apr. 11, 2024. Siemens prepared the Settlement Agreement and Release and the Stipulation of Dismissal. ECF No. 39-1. Ms. Maccarone refused to sign any of the documents.

    Siemens moved to enforce the settlement agreement. ECF Nos. 38. After full briefing on the issue, on September 4, 2024, the Court issued an Order granting Siemen's Motion to Enforce the Settlement Agreement. ECF No. 46. Ms. Maccarone moved to vacate that decision, but the Court denied that request. ECF

No. 53. The Court gave Ms. Maccarone until October 25, 2024, to sign the settlement agreement and release or this matter would be dismissed for failure to comply with a Court Order. Ms. Maccarone did not sign. Siemens has now moved to dismiss.

Federal Rule of Civil Procedure 41(b) provides that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." The Court ordered Ms. Maccarone to sign the release and settlement agreement. Ms. Maccarone failed to do so. To resolve this matter short of dismissal, the Court also set a mediation and invited all counsel and parties. Ms. Maccarone refused to attend.

Thus, the Court GRANTS the Defendant's Motion to Dismiss. Judgment shall enter for the Defendant. This case is dismissed.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief United States District Judge

February 6, 2025

ADD022

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

**ANN MARIE MACCARONE,**
    **Plaintiff,**


    **v.**

                        **C.A. No. 20-259 JJM**


**SIEMENS INDUSTRY, INC.,**
    **Defendant.**

## <u>JUDGMENT</u>

**[   ]** Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

[ **X** ]  Decision by the Court.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.


IT IS ORDERED AND ADJUDGED:

    Judgment hereby enters for the Defendant pursuant to the Order entered by this Court on February 6th, 2025.


                        Enter:


                        /s/ Ryan H. Jackson


                        Deputy Clerk

Dated: February 6, 2025

ADD023

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

Ann Marie Maccarone
_____

Plaintiff

v.

Siemens Industry, Inc.,
_____

Defendant

Case No. 20-cv-259-JJM-LDA
_____

## **NOTICE OF APPEAL**

Notice is hereby given that Ann Marie Maccarone,
_____
Name

the Plaintiff in the above-referenced matter, hereby appeals to the United States
_____
Party Type

Court of Appeals for the First Circuit from the:

☑ Final judgment entered on 2/6/2025.
_____
Date of Judgment

and/or

☑ The order granting motion to dismiss entered on 2/6/2025.
_____                                  _____
Description of Order                                      Date of Order

Sonja L. Deyoe
_____
Name

6301
_____
Bar Number

Law offices of Sonja L Deyoe
_____
Firm/Agency

395 Smith Street
_____
Address

Providence, RI 02908
_____
City/State/Zip Code

Respectfully submitted,

/s/ Sonja L. Deyoe
_____
Signature

3/3/2025
_____
Date

401-864-5877
_____
Telephone Number

SLD@the-straight-shooter.com
_____
Email Address

Reset Form        Print Form        Save Form